No. 4117

Second Circuit

CRICHTON CO., LTD., v. ETHERIDGE

(April 5, 1932. Opinion and Decree.)

Drew & Richardson, of Minden, attorneys for plaintiff, appellant.

R. F. Langston, of Minden, attorney for defendant, appellee.

McGREGOR, J. This is a suit on open account for supplies used in making a crop on defendant's farm in the year 1927. Attached to the petition is an itemized statement of account which, including interest computed to January 1, 1930, amounts to $343.63. The account is made out in the name of "O. A. Etheridge for E. L. Martin," and shows credits totaling $205.47. Alleging amicable demand and failure to pay, the plaintiff prays for judgment against the defendant for $138.16, with legal interest from January 1, 1930.

The answer of the defendant denies the indebtedness and alleges that the plaintiff furnished supplies to E. L. Martin, one of his tenants, and that he guaranteed the account to the extent of $205, but that that amount has been paid in full.

On trial in the lower court there was judgment in favor of the defendant rejecting plaintiff's demand, and from that judgment plaintiff is prosecuting this appeal.

On February 9, 1927, the day that the account was opened, the defendant wrote and caused to be delivered to the plaintiff an order which reads as follows:

"Grove, La. 2/9/1927
"Mr. Tom Glass,
"Please let Mr. Martin have some lard, 8 lbs., sugar 10 lbs., flour 48 lbs., meat 15 lbs., soda 25 cts., and anything he may need.
"O. A. Etheridge."

It is admitted that this written order is the basis upon which the plaintiff began to furnish the supplies that are listed in the account sued upon, but the defendant alleges in his answer that he placed an oral limit of $205 as being the greatest amount which he would guarantee, and that this limit was reached about June 1, 1927. In his testimony, however, he states that the limit was $200, and that that was the amount of supplies that he made arrangements with the plaintiff in the beginning to furnish his tenant, Martin. He testifies further that after the crop had been "laid by" he went to plaintiff's office to see how the account was standing and found that it was about $205, and that he agreed then to stand for the additional $5. His testimony on this point is as follows:

"A. I told him when he laid by. I went in there and told him when Mr. Martin laid by and turned the mule in the lot. I went in there and told Mr. Glass I wanted to know how much Mr. Martin owed. He said, 'Let us go in the office.' He had it all run up on the books and he said, 'It is to date Two Hundred Five ($205.00) Dollars.' I said, 'That is all right, Mr. Glass.' I says, 'Two hundred five ($205.00) dollars, all right. That is Five ($5.00) dollars over what I instructed you but that is all right. Just let it go.'"

In his testimony, Mr. Glass, the president of the plaintiff company, denies this statement, and denies that there was any particular limit on the amount to be supplied. He testifies that the only conversations he held with the defendant were on occasions when he was urging the plaintiff to hold Martin down on his purchases.

The defendant was farming his land on what is commonly known as the share-crop system, and accordingly whatever crop Martin, the tenant, made, one-half of it belonged to him and the other half belonged to the defendant. As a part of this system,

the land-owner often, either furnishes the necessary supplies to the tenant for making the crop and charges them to the tenant, or he guarantees some one else who furnishes them. Of course, in either case the farmer must and does keep a close watch on the tenant's account so as to hold it within the limit of the probable value of the tenant's half of the crop when harvested. As a general rule, and it is common knowledge that, if a tenant needs help at the beginning of the crop season, he will also need it at least until he can begin to realize something from his crop after he begins to harvest it. So it would seem that no farmer would ordinarily withhold supplies from his tenant at what is called "laying-by time." It does not appear reasonable in this case that the defendant would have refused to go further in the matter of providing a way for his tenant to secure supplies with which to harvest his crop. The tenant has to live during that season as well as when the crop is being planted and cultivated.

In view of the fact that the written order of February 9, quoted above, is the basis of the beginning of this account, and in view of the further fact that that order contains no limit either as to time or amount, it is sufficient to bind the defendant for the payment of any reasonable amount purchased by Martin during the entire crop season, unless defendant can prove his allegation that when the account had reached about $205, or $5 more than the limit which he claims to have been agreed upon in the beginning, he notified the plaintiff he would not be responsible any further. This is a special defense, and the burden of proof is on the defendant. As stated above, plaintiff denies that any such notice was given to it. Martin, in a vague, uncertain manner, undertakes to corroborate the defendant on this point,

but he does it in such way that his testimony has no value whatever. If there had been this general understanding that the limit had been reached, it is certain that Martin would have made a new arrangement with the plaintiff or some one else. This was not done. Nothing of the kind was ever mentioned between the parties. The account was kept open without a break, and Martin continued to get supplies from plaintiff just as he had been doing.

This is a significant fact: In his brief counsel for defendant calls attention to the fact that the first four payments on the account were $47.03, $46.90, $42.40 and $47.16, and that the last payment was $21.98. He argues that in the first four items of credit each represents Martin's half of a bale of cotton, and that the $21.98 payment was made in that exact sum in order to balance that part of the account for which defendant was responsible. It is argued that the sum of $21.98 was much less than one-half the value of a bale of cotton. He says:

"The bale of cotton from which this $21.98 came must have brought as much as the other cotton; therefore, the amount paid on November 26 represented a fractional part of one-half the amount the bale brought."

This argument is not sound. It presumes that there was a whole bale of cotton from which the said amount of credit came, when, as a matter of fact, this was not established by the testimony. On the contrary, it is conclusively proved by the testimony that plaintiff got all of Martin's half of the cotton. So that last payment is bound to have come either from a fractional or a lightweight bale. That often happens on a farm at the end of the season. Furthermore, if it had been a fact that it was announced and known by all that defendant's obligation was at an end,

plaintiff would have gotten the rest of Martin's interest in that last bale of cotton, if there had been any left. Counsel for defendant argues that plaintiff's president is a shrewd business man. That being a fact, his very shrewdness would have dictated this course of action, for if defendant's liability were at an end, plaintiff would certainly have secured all of Martin's cotton at the time that it was in its hands. Another thing that stands out prominently is this: There is no point in the account where the amount is exactly $205.47, which defendant says he agreed to pay and did pay. At the end of July the account stood at exactly $204.27. If defendant had been planning to pay up to date including that date, that is the amount he would have paid, and not $205.47. As we see it, the truth of the matter is Martin's half of the crop brought $205.47, and every cent of it was applied to his account with the plaintiff. It so happens that this amount was within a few cents of what the account was at or near "laying-by time." The crops fell short of everybody's expectation, and the defendant has sought to establish that his guarantee covered only such portion of the account as would equal the value of the crop actually made. In this we think he has failed. Plaintiff's account with defendant's tenant began with written authority and guaranty, the withdrawal of which has not been satisfactorily established.

For these reasons, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, reversed, and set aside, and it is now ordered that there be judgment herein in favor of the plaintiff, Crichton Company, Limited, against the defendant, O. A. Etheridge, as prayed for in the sum of $138.16, with 5 per cent interest from January 1, 1930, and all the costs of both courts.

DREW, J., recused, and takes no part.